UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERRY MOBLEY, JR., | : | CIVIL NO: 1:13-CV-01804 |
| Plaintiff | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| C.O. LANTZ, *et al.*, | : | |
| Defendants | : | |

# REPORT AND RECOMMENDATION

## I. Introduction.

The plaintiff, Gerry Mobley, Jr., contends that one of the two remaining defendants violated his rights by harassing him and that the other remaining defendant violated his rights by issuing him a misconduct report in retaliation for his filing a grievance. Mobley has chosen to proceed only as to the retaliation claim. For the reasons set forth below, we recommend that the defendants' motion for summary judgment be granted in part and denied in part.

## II. Background and Procedural History.

Mobley, a state prisoner proceeding *pro se*, began this 42 U.S.C. § 1983 case by filing a complaint and an application for leave to proceed *in forma pauperis*. Although Mobley is currently incarcerated at the State Correctional Institution at

Albion, he is complaining about events that happened at the State Correctional Institution at Huntingdon (SCI-Huntingdon). Mobley named as defendants the following officers and officials of SCI-Huntingdon and the Pennsylvania Department of Corrections (DOC): (1) Corrections Officer Lantz; (2) Lieutenant Morrison; (3) Captain Harman; (4) Grievance Coordinator Green; (5) Hearing Examiner Mitchell; (6) Superintendent Bickell; (7) Chief Grievance Officer Varner; (8) Chief Hearing Examiner Lewis; (9) Secretary Wetzel; (10) John/Jane Doe #1; and (11) John/Jane Doe #2.

The Court dismissed all of Mobley's claims except a Fourth Amendment claim and an equal protection claim against defendant Lantz, a retaliation claim against defendant Morrison, and state law claims against both Lantz and Morrison. As to those remaining claims, Mobley alleges that in February of 2012, Lantz began harassing him by, among other things, waking him in the middle of the night, ordering him to get out of bed, to show some flesh, to lift his shirt, and to run his hands around the band of his underwear, all on threat of being put in the hole if he did not comply. According to Mobley, Lantz was harassing him because Lantz did not like Mobley's brother, who previously had been incarcerated at SCI-Huntingdon and who had problems with the guards.

Mobley alleges that, on February 24, 2012, he called the Sexual Assault Hotline and reported Lantz's harassment. Not hearing anything in response to that

2

call, on February 27, 2012, Mobley filed a grievance in which he complained about Lantz's actions and stated that on February 24th, he called the Sexual Assault Hotline. Two days after Mobley filed that grievance, defendant Morrison charged him with lying to an employee. The misconduct report issued by Morrison stated, in pertinent part:

> The Security Office received a copy of a Grievance dated February 27, 2012 authored by inmate Mobley on February 29, 2012. Inmate Mobley begins his Grievance by stating he called the Sexual Assault Hotline and reported his complaint on February 24, 2012 at 7:30 p.m.
> The Security Office had not received such a complaint from SCI Camp Hill, which is standard procedure, and inquired of SCI Camp Hill concerning the matter. Shift Lt. McElwain, SCI Camp Hill, reviewed the calls placed to the Sexual Assault Hotline on February 24, 2012. Lt. McElwain reports there were no phone calls received from any inmate or inmate's family from SCI Huntingdon on February 24, 2012.
> Inmate Mobley is blatantly lying that he called the Sexual Assault Hotline to report his complaint.

*Doc. 1-3* at 2. Mobley alleges that he did, in fact, call the Sexual Assault Hotline, and he contends that Morrison issued the misconduct in retaliation for his grievance.

Following a disciplinary hearing, a hearing examiner found Mobley guilty of misconduct and sanctioned him with 90 days disciplinary custody. Mobley appealed the disciplinary finding to the Program Review Committee, which denied Mobley's appeal but reduced the sanction from 90 days disciplinary time to 60 days. Mobley further alleges that he appealed to Superintendent Bickell and then

3

to Chief Hearing Examiner Lewis, who denied his appeals.  According to Mobley, in April of 2012, defendant Morrison threatened that he would bury Mobley in the hole if he attempted to litigate the sexual harassment or retaliation claims in court or if the matter ever came up again.

The remaining claims are: (1) a Fourth Amendment claim against defendant Lantz; (2) an equal protection claim against defendant Lantz; (3) a retaliation claim against defendant Morrison; (4) a state-law claim of intentional infliction of emotional distress against both Lantz and Morrison; and (5) a state-law defamation claim against Morrison.  Following discovery, defendants Lantz and Morrison filed a motion for summary judgment as to all of Mobley's remaining claims.  In his brief in opposition to that motion, Mobley addresses only the retaliation claim against Morrison, and in his declaration, he explicitly states that he is proceeding only as to his retaliation claim against defendant Morrison. *See Doc. 78-2* at ¶53 ("I am for the sake of the Court's time and resources, not pursing my unreasonable search claims, or equal protection claims against Lantz or any of my state tort claims against Lantz or Morrison. . . . I am pursing my retaliation claims against Morrison . . . .").  Given Mobley's concession, we recommend that defendant Lantz be granted summary judgment as to the remaining claims against him and that defendant Morrison be granted summary judgment as to the state-law claims

against him. For the reasons discussed below, however, we recommend that Morrison not be granted summary judgment as to the retaliation claim against him.

## III. Summary Judgment Standards.

The defendants moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex,* 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Further, a party that moves for summary judgment on an issue for which he bears the ultimate burden of proof faces a difficult road. *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). "[I]t is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law." *El v. Se. Pa. Transp. Auth.,* 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted). A party who has the burden of proof must persuade the factfinder that his propositions of fact are true, and "if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted." *Id*. "Specious objections will not, of course, defeat a motion for summary judgment, but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will." *Id.*

## IV. Defendant Morrison Is Not Entitled to Summary Judgment on the Basis that Mobley Failed to Exhaust Administrative Remedies.

Defendant Morrison contends that he is entitled to summary judgment because Mobley did not exhaust available administrative remedies. We disagree.

The Prison Litigation Reform Act requires a prisoner to exhaust available administrative remedies prior to filing an action challenging prison conditions in court. The Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). "This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Id.* The benefits of the exhaustion requirement "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219. While the exhaustion requirement serves to alert prison officials to a problem, "notice to

9

those who might later be sued . . . has not been thought to be one of the leading purposes of the exhaustion requirement." *Id.*

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 739 (2001), and the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.* at 77. Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006). In other words, it requires more than simple exhaustion, i.e., more than that there is no further process available to the prisoner within the grievance system. *Spruill v. Gillis*, 372 F.3d 218, 227-31 (3d Cir. 2004). Section 1997e(a) requires that a prisoner follow the procedural requirements set forth in the

administrative remedy process that is available to him. *Id.* at 231. The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. *Id. See also Jones,* 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Because the prison grievance procedure provides the yardstick for what is required to be placed in a grievance, failure to comply with the requirements of the grievance process may result in a prisoner procedurally defaulting his claims. *Spruill*, 372 F.3d at 230-232. But a prisoner's procedural default is excused when, in response to a grievance, the prison addresses a claim on the merits notwithstanding the procedural default. *Id.* at 234 (holding that the grievance officer's recognition that a certain defendant was involved in the events excused any procedural defect in not naming that defendant in the grievance).

Defendant Morrison contends that Mobley failed to exhaust administrative remedies because although he filed a grievance relating to the misconduct, he failed to appeal the denial of that grievance to final review as require by DC-ADM 804, the Pennsylvania Department of Corrections' Official Inmate Grievance System. DC-ADM 804, however, specifically provides that "[a] grievance ***directly related to a specific inmate misconduct charge or a specific disciplinary sanction***

***and/or the reasons for placement in administrative custody*** will not be addressed through the Inmate Grievance process and must be addressed through Department policy **DC-ADM 801, "Inmate Discipline"** and/or **DC-ADM 802, "Administrative Custody Procedures."** DC-ADM 804 Procedures Manual §1.A.7 (emphasis in original). Because DC-ADM 804 specifically excludes from its coverage grievances directly related to misconduct charges or disciplinary sanctions, Mobley's claim that Morrison issued him the misconduct report in retaliation for his earlier grievance is not barred by any failure to exhaust under DC-ADM 804. Further, defendant Morrison does not argue that Mobley failed to exhaust or procedurally defaulted his claim relating to the misconduct report under DC-ADM 801, and Mobley has presented evidence that he, in fact, exhausted his administrative remedies regarding the misconduct through DC-ADM 801. *See Doc. 78-2* at ¶¶33-34. Thus, defendant Morrison is not entitled to summary judgment on the basis that Mobley failed to exhaust available administrative remedies.

**V. Defendant Morrison Is Not Entitled to Summary Judgment on the Merits of Mobley's Retaliation Claim.**

Defendant Morrison is also not entitled to summary judgment on the merits of the retaliation claim against him. Retaliation claims are judged against exacting legal standards. A prisoner claiming that a defendant retaliated against him for

exercising his constitutional rights must show that: (1) his conduct was constitutionally protected; (2) he suffered "adverse action" at the hands of the defendant; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision of the defendant. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002).

Defendant Morrison contends that Mobley cannot establish that he engaged in constitutionally protected conduct. Filing a prison grievance is generally constitutionally protected activity. *Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015) (noting that "[]the filing of a prison grievance is an activity protected by the First Amendment."). Morrison contends, however, that because an investigation of Mobley's statement in his grievance that he called the Sexual Assault Hotline at a specific time revealed that that statement was false, Mobley cannot establish that he engaged in constitutionally protected conduct. *See Coffee v. Burkhart*, No. CIV.A. 12-163 ERIE, 2014 WL 1316100, at *8 (W.D. Pa. Mar. 28, 2014) ("[T]he inclusion of false statements within grievances does not constitute constitutionally protected conduct."); *Brightwell v. Lehman*, No. CIV.A. 03-205J, 2007 WL 2479682, at *6 (W.D. Pa. Aug. 29, 2007) ("Plaintiff does not have a First Amendment Right to provide false statements."); *see also Hadden v. Howard*, 713 F.2d 1003, 1008 (3d Cir. 1983) (concluding in connection with a due

process claim that "knowingly false and malicious statements made in a [prison] complaint are not protected").

Morrison cites to the misconduct report that he issued, which states, in effect, that: when an inmate calls the Sexual Assault Hotline, it is standard procedure to receive a notification from SCI-Camp Hill; the Security Office at SCI-Huntingdon did not receive a notification from SCI-Camp Hill about a call on February 24, 2012; after receiving Mobley's grievance, the Security Office called SCI-Camp Hill about the matter; Lieutenant McElwain of SCI-Camp Hill reviewed the calls placed to the Sexual Assault Hotline on February 24, 2012; and McElwain reported that there were no phone calls received from any inmate or any inmate's family from SCI-Huntingdon on that date. *Doc. 69-6* at 2.  Morrison also submitted a "P.R.E.A. Hotline Report Log" (call log), which he asserts leads to an inference that Mobley did not call the hotline on February 24, 2012. *See Doc. 69-7* at 7. Mobley contends that those documents are not evidence that he lied in his grievance; he asserts that the misconduct report is hearsay and he questions the authenticity of the call log.[1]  We need not address the admissibility of these documents on summary judgment because Mobley also presented evidence that he did, in fact, call the Sexual Assault Hotline on February 24, 2012.  He states in his

---

[1]  Mobley also points out that the call log does show a call to the Hotline on February 24, 2012, but the institution from which the call was received is not listed and the call was documented as a "hang up." *See Doc. 69-7* at 7.

14

declaration that on February 24, 2012, between 6:30 p.m. and 8:00 p.m., he called the Sexual Assault Hotline and recorded a message about defendant Lantz. *Doc. 78-2* at ¶¶15 & 51. Based on Mobley's statement in his declaration, there is a genuine factual dispute about whether he called the Sexual Assault Hotline on February 24, 2012. Thus, defendant Morrison is not entitled to summary judgment on the basis that Mobley's filing of the grievance was not constitutionally protected conduct because he lied in the grievance.

Morrison also contends that he is entitled to summary judgment because Mobley was found guilty of the misconduct charged in the misconduct report. Prison officials may prevail on a retaliation claim "by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001). In *Carter*, 292 F.3d at 159, the United States Court of Appeals for the Third Circuit affirmed the grant of summary judgment to prison officials on claims that the officials took disciplinary actions against the prisoner for his legal activities. Based on the "sizeable quantum" of evidence of misconduct on the part of the prisoner, the court in *Carter* concluded that, even if the prison officials were motivated by animus to jailhouse lawyers, the prisoner's offenses "were so clear and overt" such that there was no genuine issue of material fact that the officials' actions were reasonably related to legitimate penological interests and the prisoner

"would have been disciplined notwithstanding his jailhouse lawyering." *Id.* at 158-59. The court described the "sizeable quantum" of evidence of misconduct against the prisoner:

> In this case, Carter was never charged with misconduct for helping other inmates with legal matters or having their legal materials in his cell. Rather, he was charged with misconduct for undisputed violations of prison policy. The search and seizure of items from his cell were related to these various violations. Carter was discovered with a stolen typewriter in his cell. The cell search uncovered an envelope containing two receipts for the typewriter, identical to the sales receipt and credit card sales slip faxed by the vendor. As a result, Carter was disciplined with sixty days in the RHU.
> Moreover, it is not disputed that Carter corresponded with Unger in violation of prison policy. Carter conceded that he wrote a note to Unger without seeking authorization for that correspondence. His cell was searched in connection with this allegation; he was written up and subsequently disciplined with thirty days for this conduct. Additionally, there is no dispute that the amount of property kept by Richard Carter and Dana Carter in their cell exceeded the amount allowed by fire and safety regulations. The materials were seized for this reason, and Carter was allowed to select up to two boxes of his personal material to keep in his cell. Finally, in the course of searching Carter's cell in connection with the unauthorized use of the mails, prison officials found the newsletter, "The Last Line of Defense," a publication of which Carter was the editor and for which he had not requested or obtained approval by the SCI–Mahanoy administration. The foregoing represents a sizeable quantum of misconduct evidence.

*Id.* at 158.

Morrison cites unpublished decisions, including the Third Circuit's opinion in *Nifas v. Beard,* 374 F. App'x 241 (3d Cir. 2010), for the proposition that

retaliatory-disciplinary claims fail when there is "some evidence" supporting a guilty finding on the misconduct charge. In *Nifas,* the Third Circuit held that "Nifas's retaliatory discipline claim fails because there is 'some evidence' supporting the guilty findings for the three disciplinary charges brought against Nifas after he filed his grievance in October 2006." *Id.* at 244. In *Nifas,* the Third Circuit cited the Eighth Circuit's decision in *Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir. 1994), which held that a finding based on "some evidence" that the prisoner committed the misconduct charged essentially "checkmates" a prisoner's retaliation claim. *Id.; see also Romansky v. Stickman*, 147 F. App'x 310, 312 (3d Cir. 2005) (citing *Henderson* and concluding that "a finding that a prisoner violated the rules checkmates his retaliation claim"); *Ingram v. SCI Camp Hill*, No. 3:08-CV-0023, 2010 WL 4973302, at *15 (M.D. Pa. Dec. 1, 2010) (citing *Romansky* and *Henderson* and stating that "[t]he Third Circuit has held that an inmate does not state a retaliation claim based on the issuance of a misconduct where the inmate is found guilty of the charge set forth in the misconduct report"), *aff'd on other grounds, Ingram v. S.C.I. Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011).

    We are bound by the Third Circuit's published opinions, not its unpublished opinions. Thus, we must follow *Carter* rather than *Nifas.* "[I]n *Carter,* the controlling precedential case in this circuit, the Court of Appeals granted summary

17

judgment for the defense based on the "quantum of evidence" in the record concerning the plaintiff's misconduct, not the mere fact that the prisoner had been found guilty of the misconduct." *Mincy v. McConnell*, 1:09-CV-236-SJM-SPB, 2012 WL 1436562, at *2 (W.D. Pa. Apr. 25, 2012) (quoting *Carter,* 292 F.3d at 152). "*Carter* should not be read as establishing a per se bar against retaliation claims in every instance where a prisoner is found guilty of an allegedly false misconduct charge." *Id.*[2] Because a misconduct report almost always provides "some evidence" of the misconduct charged, if a retaliation claim is barred merely by the fact that a prisoner was found guilty of the misconduct on the basis of the

---

[2] We note that the "some evidence" standard is borrowed from a due process case. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985)(holding that due process requires that there be "some evidence" to support the findings of the disciplinary hearing officer). In other contexts, the Third Circuit has distinguished due process claims from retaliation claims. *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000)(holding that *Sandin v. Conner,* 515 U.S. 472 (1995), does not preclude a claim that the prisoner was kept in administrative segregation in retaliation for filing civil rights actions against prison officials because retaliation may be actionable even when the retaliatory action does not involve a liberty interest); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)("We hold that the relevant question is not whether Rauser had a protected liberty interest in the privileges he was denied, but whether he was denied those privileges in retaliation for exercising a constitutional right."); *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002)(noting, in the context of a claim by a prisoner that an officer issued a false misconduct report in retaliation for the prisoner's conduct toward the officer and to cover up a beating, that it had "previously held that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment guarantee of access to the courts," but concluding that Smith did not "claim that another constitutional right (such as access to the courts) was violated" and therefore his due process claim based on the falsified misconduct failed).

misconduct report, there would almost never be a case where a prisoner could prevail on a retaliatory-misconduct claim even where there is evidence that the misconduct report was false and was issued in retaliation for constitutionally protected conduct rather than for reasons reasonably related to legitimate penological interests.

Here, Morrison charged Mobley with lying to an employee based on his statement that he called the Sexual Assault Hotline. Mobley has presented evidence, however, that he did, in fact, call the Sexual Assault Hotline. Thus, there is a genuine factual dispute about whether Mobley lied in his grievance. Given that factual dispute, defendant Morrison is not entitled to summary judgment as to the retaliation claim merely because Mobley was found guilty of the misconduct charged in the misconduct report.

## VI. Recommendations.

Accordingly, for the foregoing reasons, we recommend that the defendants' motion (doc. 66) for summary judgment be granted in part and denied in part; the motion should be granted as to all remaining claims against defendants Lantz and Morrison except the retaliation claim against Morrison.

> The Parties are further placed on notice that pursuant to Local Rule 72.3:
>
> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in

28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 19th day of January, 2016.

<div style="text-align:right">

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

</div>