IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERRY MOBLEY, JR.,<br>   Plaintiff | :<br>:<br>: |
|   vs. | :  CIVIL NO. 1:CV-13-1804<br>: |
| C.O. LANTZ, *et al.*, | :  (Judge Caldwell)<br>: |
|    Defendants | :<br>: |

*M E M O R A N D U M*

I.  *Introduction*

   The pro se plaintiff, Gerry Mobley, an inmate at the state correctional institution in Albion, Pennsylvania, filed this 42 U.S.C. § 1983 action for events occurring while he was incarcerated at the state correctional institution in Huntingdon, Pennsylvania. We dismissed some of the claims but allowed others to proceed against defendants Lantz, a correctional officer, and Lt. Morrison. *Mobley v. Lantz*, 2014 U.S. Dist. Lexis 104459 (M.D. Pa. July 31, 2014)(adopting magistrate judge's report at 2014 U.S. Dist. Lexis 105809, dated July 8, 2014).

   Defendants filed a motion for summary judgment. In response to that motion, Plaintiff decided to pursue only one of his remaining claims, a claim that defendant, Lt. Morrison, filed a misconduct report against him in retaliation for Plaintiff's having filed a grievance against defendant C.O. Lantz.

The magistrate judge has filed a report recommending that judgment be entered in Lantz and Morrison's favor on the claims Plaintiff is no longer pursuing. The magistrate judge has recommended that the motion be denied with respect to the retaliation claim against Lt. Morrison. The magistrate judge rejected Defendants' argument that the retaliation claim could not succeed when Plaintiff was found guilty at the misconduct hearing on the disciplinary charge.

We are considering Defendants' objection to that recommendation. The objection is slightly different from the argument made on summary judgment. Defendants do not now rely simply on a finding of guilt at the misconduct hearing. They now contend that a finding of guilt based on some evidence to support the misconduct charge satisfies a defendant's burden in a retaliation claim to show that the misconduct charge would have been filed anyway, regardless of any retaliatory motive. They maintain that such a showing defeats a retaliation claim and that Morrison is thus entitled to summary judgment on the claim.

II. *Standard of Review*

The court must conduct a de novo review of those portions of the report and recommendation to which objections are made. *Snyder v. Bender*, 548 F. App'x 767, 770 (3d Cir. 2013)(nonprecedential)(citing *Goney v. Clark,* 749 F.2d 5, 7 (3d Cir. 1984) and 28 U.S.C. § 636(b)(1)). For those portions of the report and recommendation for which there are no objections, we need only review for clear error or manifest injustice. *See*

*Smith v. Lindsey*, No. 13-CV-2914, 2015 WL 136639, at *2 (M.D. Pa. Jan. 7, 2015)(Caldwell, J.).

Since the magistrate judge was dealing with a motion for summary judgment, we also analyze Defendants' objection in light of the standard we must employ in resolving summary judgment motions. The moving party is entitled to summary judgment if he "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In pertinent part, parties moving for, or opposing, summary judgment must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). We "must view all evidence and draw all inferences in the light most favorable to the non-moving party" and we will only grant the motion "if no reasonable juror could find for the non-movant." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

III.  *Background*

The summary-judgment record provides the following relevant background. On February 27, 2012, Plaintiff filed a grievance in which he complained about what he said was sexual harassment by C.O. Lantz when Lantz would come to his cell on the 10 p.m. to 6 a.m. shift, wake him up, and demand that he remove his bed sheets and show some flesh. Lantz would make this demand (Defendants say for the inmate count), even

-3-

though Lantz could see his face and hear his voice.  (Doc. 69-4, ECF p. 2).  Plaintiff felt violated because he was in his underwear at these times.  (*Id.*).  The first sentence of this grievance reads as follows: "On FRIDAY, FEBRUARY 24, 2012 at or around 7:30 P.M. I called the D.O.C.'s Sexual/Abuse Hotline . . . ."  (*Id.*).

Two days later, on February 29, 2012, Morrison filed a misconduct report charging Plaintiff with lying to an employee.  (Doc. 69-6, ECF p. 2).  In pertinent part, the report stated:

> The Security Office received a copy of a Grievance dated February 27, 2012 authored by inmate Mobley on February 29, 2012.  Inmate Mobley begins his Grievance by stating he called the Sexual Assault Hotline and reported his complaint on February 24, 2012 at 7:30 p.m.
>
> The Security Office had not received such a complaint from SCI Camp Hill, which is standard procedure, and inquired of SCI Camp Hill concerning the matter.  Shift Lt. McElwain, SCI Camp Hill, reviewed the calls placed to the Sexual Assault Hotline on February 24, 2012.  Lt. McElwain reports there were no phone calls received from any inmate or inmate's family from SCI Huntingdon on February 24, 2012.
>
> Inmate Mobley is blatantly lying that he called the Sexual Assault Hotline to report his complaint.

(*Id.*).

In response to the report, Mobley stated that he did, in fact, call the Sexual Assault Hotline (also referred to as the sexual abuse hotline), on the night of February 24 between 6:30 p.m. and 8:00 p.m. and that he had filed the grievance against Lantz because he had gotten no response from the phone call.  (*Id.*, ECF p. 4).

-4-

On March 2, 2012, a hearing on the misconduct report was held. (Doc. 69-6, ECF p. 6). The only evidence against Plaintiff at the hearing was the misconduct report. (Doc. 78-1, ECF p. 36). The hearing examiner found Mobley guilty of the misconduct and sanctioned him with ninety days' disciplinary custody. In doing so, the hearing examiner first acknowledged that Mobley stated that he did make the call even though there was no record of it. (Doc. 69-6, ECF p. 6). In part, the hearing examiner continued:

> The staff report is believed over the denial of inmate Mobley that Mobley did not call the Sexual Abuse hotline on 2-29-2012 at 1930 hours as he claims in his grievance.[1] The Examiner notes all calls to the Sexual Abuse Hotline are recorded and CO3 McElwain at SCIC had NO calls at all from SCIH when queried by CO3 Morrisson [sic]. The Examiner notes it is policy for staff at SCIC to contact the security office at the calling institution to advise of a [complaint] . . . so that complaint can be investigated. Clearly inmate Mobley did not make the call he states he did in the grievance or there would be some record of it. The Examiner notes when inmates call the sexual abuse hotline it is NOT documented on their phone records and is only documented at SCIC on the Sexual Abuse Hotline phone record for anonymity reasons.

(*Id.*)(footnote added)(emphasis in original).

Plaintiff appealed the disciplinary finding to the Program Review Committee, which denied his appeal but reduced the sanction from ninety days' disciplinary time to sixty days. (Doc. 69-6, ECF pp. 7-8). Mobley then appealed to Tabb Bickell, Huntingdon's superintendent, who denied the appeal. (Doc. 1-3, ECF pp. 6-7).

---

[1] The date is a typographical error. As noted, the call was supposedly made on February 24.

Plaintiff's final appeal to the Department of Corrections (DOC's) chief hearing examiner was also unsuccessful. (*Id.*, ECF pp. 8-10).

In moving for summary judgment, Defendants have submitted evidence not presented at the misconduct hearing: records from the DOC's inmate phone system (Doc. 69-7, ECF pp. 2-6) and a P.R.E.A. Hotline Report Log, a handwritten log kept by correctional officers at SCI-Camp Hill who answered the Sexual Assault Hotline. (*Id.*, ECF p. 7).[2] The records from the phone system indicate that no phone call was made from Huntingdon to the Sexual Assault Hotline on February 24, 2012, between 6:30 p.m. and 8:00 p.m. The P.R.E.A. Hotline Report Log shows only one call to the hotline on February 24 at 6:34 p.m. but that it was a hangup that does not indicate who made the call or from which prison.[3]

In opposing summary judgment, Plaintiff affirms that he did in fact call the hotline on February 24, 2012, between 6:30 p.m. and 8:00 p.m. and that his message was recorded. (Doc. 78-2, Mobley Decl. ¶¶ 15 and 51). He also makes conclusional allegations throughout his evidentiary submissions that Morrison fabricated the misconduct report to retaliate against Plaintiff for filing the grievance against Lantz. See Doc. 78-2, Mobley penalty-of-perjury declaration ¶¶ 17, 52 and 53.

---

[2] "P.R.E.A" stands for "Prison Rape Elimination Act." *See* 42 U.S.C.A. §§ 15601-15609.

[3] These records were not authenticated at the time they were submitted. Upon court order, Defendants did submit proper authentication. See Doc. 83.

IV.  *Discussion*

To prevail on a retaliation claim, a prisoner must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered some "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected conduct was a substantial or motivating factor in the decision to discipline him.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

If the prisoner establishes this prima facie case of retaliation, the burden then shifts to the prison officials to show by a preponderance of the evidence that their action would have been the same, even in the absence of protected activity.  *Id.* at 334 ("Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.").  If the prison officials can make this showing, it defeats the retaliation claim.  *Carter v. McGrady*, 292 F.3d 152. 159 (3d Cir. 2002).

In moving for summary judgment on Plaintiff's retaliation claim, Defendants argued Morrison could prevail on this claim by showing that he would have filed the misconduct report for valid penological reasons, the falsehood in the grievance, even if Plaintiff's grievance was otherwise protected activity.  They contended he could meet this burden by showing that Plaintiff had been found guilty on the misconduct charge, that this finding of guilt "checkmate[ed] his retaliation claim," citing in support *Nifas v. Beard*, 374

F. App'x 241 (3d Cir. 2010)(nonprecedential); *Romansky v. Stickman*, 147 F. App'x 310 (3d Cir. 2005); and *Ingram v. SCI-Camp Hill*, No. 08-CV-0023, 2010 WL 4973302 (M.D. Pa. Dec. 1, 2010). (Doc. 67, ECF p. 12, Defs.' Br. in Support).

In *Nifas*, the Third Circuit held in a two-sentence analysis that the prisoner's retaliation claim failed because there was some evidence supporting the three disciplinary charges he claimed were retaliatory. The Third Circuit relied on *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994), where the Eighth Circuit stated that a finding of some evidence to support a disciplinary charge "checkmates" a retaliation claim. *Nifas*, 374 F. App'x at 244.[4]

*Henderson* borrowed the "some evidence" standard from *Superintendent v. Hill*, 472 U.S. 445, 454-56, 105 S.Ct. 2768, 2773-75, 86 L.Ed.2d 356 (1985). In *Hill*, the Supreme Court held that due process requires that a finding of guilt at a prison disciplinary hearing had to be supported by "some evidence." *Id.* at 454, 105 S.Ct. at 2773. In *Henderson*, the Eighth Circuit stated that a finding of guilt based on some evidence defeated a retaliation claim because under Eighth Circuit law a prison official can defeat a retaliation claim by showing that the discipline was imposed for an actual violation of prison regulations and not to retaliate against the inmate. 29 F.3d at 469. And a finding of guilt based on some evidence made that showing. *Id.*

---

[4] In *Romansky* and *Ingram* (relying on *Romansky*), the courts stated that a finding of guilt based on the misconduct charge defeats a retaliation claim. *Romansky*, 147 F. App'x at 312; *Ingram*, 2010 WL 4973302, at *15.

The magistrate judge rejected Defendants' argument for two reasons. First, she refused to follow *Nifas* or *Romansky* because they were nonprecedential opinions and she thought that *Carter v. McGrady*, 292 F.3d 152 (3d Cir. 2002), a precedential opinion, controlled her disposition of the issue. In *Carter*, the Third Circuit affirmed a summary judgment against an inmate on his retaliation claim. In doing so, the court relied on the fact that the disciplinary offenses at issue there were "so clear," or that there was such a "sizeable quantum of misconduct evidence" supporting them, that it could not be said that the disciplinary actions were retaliatory. *Id.* at 158-59. Following *Carter*, the magistrate judge said that the record here, unlike in *Carter*, could not sustain a summary judgment in Morrison's favor as Plaintiff has presented evidence (apparently by way of his penalty-of-perjury declaration) that he did indeed phone the Sexual Assault Hotline on February 24, 2012. In the magistrate judge's view, this created a genuine factual dispute concerning whether Plaintiff had lied in his grievance, and if Plaintiff had not lied in his grievance, Defendants could not rely on the finding of guilt to defeat the retaliation claim.

Defendants object that *Carter* should not be read to preclude a prison official from relying on a finding of guilt based on some evidence to defeat a retaliation claim, pointing out Third Circuit nonprecedential opinions, some even citing *Carter* and *Henderson*, that have taken this position in rejecting retaliation claims. *See*, *e.g*, *Nifas*, *supra*; *Bullock v. Buck*, 611 F. App'x 744, 748 (3d Cir. 2015)(nonprecedential); *McGee v. Scism*, 463 F. App'x 61, 64 (3d Cir. 2012)(nonprecedential). He also cites district court

opinions as well, including a few from the undersigned. *See Cabello v. Loop*, No. 10-CV-700, 2012 WL 3231095, at *4 (M.D. Pa. Aug. 6, 2012)(Caldwell, J.); *Tabb v. Hannah*, No. 10-CV-1122, 2012 WL 3113856, at *9 (M.D. Pa. July 30, 2012)(Caldwell, J.).

We agree with Defendants that *Carter* does not control whether a prison official can rely on a finding of guilt based on some evidence to defeat a retaliation claim. The issue was simply not presented in *Carter*. Further, since the Third Circuit has not precluded such reliance in a precedential opinion, we are free to rely on Third Circuit nonprecedential cases that do to the extent they are persuasive. *See Sovereign Bank v. B.J.'s Wholesale Club, Inc.*, 427 F. Supp. 2d 526, 536 (M.D. Pa. 2006)(Caldwell, J.)("A nonprecedential [Third Circuit] opinion may nonetheless be persuasive.").

This brings us to the magistrate judge's second reason for rejecting Defendants' argument:

> Because a misconduct report almost always provides "some evidence" of the misconduct charged, if a retaliation claim is barred merely by the fact that a prisoner was found guilty of the misconduct on the basis of the misconduct report, there would almost never be a case where a prisoner could prevail on a retaliatory-misconduct claim even where there is evidence that the misconduct report was false and was issued in retaliation for constitutionally protected conduct rather than for reasons reasonably related to legitimate penological interests.

(Doc. 79, ECF pp. 18-19, magistrate judge's report). The argument is not without force, but we disagree. We must consider why the Third Circuit in *Rauser, supra,* allowed prison officials to defeat a prisoner-retaliation claim by showing they would have done the same thing even if the inmate could show a retaliatory motive. The Third Circuit did so in

-10-

recognition of the deference courts should afford prison officials in the difficult task of prison administration.  *Rauser*, 241 F.3d at 334.  In the context of a claim that a disciplinary charge was retaliatory, this means prison officials should be able to rely on evidence that a hearing officer found the inmate guilty on the basis of some evidence to meet their burden of showing they would have filed the charge anyway.  We think such evidence is highly relevant.

A determination of whether there is some evidence to support the decision "does not require examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence."  *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013)(nonprecedential)(citing *Thompson v. Owens,* 889 F.2d 500, 502 (3d Cir. 1989)).  "This requirement is minimal, and is satisfied if there is 'any evidence in the record that could support the conclusion reached by the'" hearing officer. *Deen–Mitchell v. Bledsoe,* 548 F. App'x 747, 750 (3d Cir. 2013)(nonprecedential)(quoting *Hill,* 472 U.S. at 455–56, 105 S.Ct. at 2774).  The requirement can be met by a misconduct report containing hearsay.  *Ortiz v. Holt*, 390 F. App'x 150, 152 (3d Cir. 2010)(nonprecedential).

In the instant case, the evidence at the misconduct hearing satisfied the some evidence standard.  Here, the evidence consisted of Morrison's misconduct report which narrated that Lt. McElwain of SCI Camp Hill had reviewed the calls placed to the Sexual Assault Hotline on February 24, 2012 and had reported that there were no phone calls received from any inmate or inmate's family from SCI Huntingdon on February 24,

2012. The report also said that the Huntingdon Security Office had not received notice of such a complaint from SCI Camp Hill, which it would have received under standard procedure if a call had been made. This meets the some evidence standard.[5] Additionally, prison officials have a legitimate penological interest in deterring an inmate from lying to a prison employee.

As noted above, we have in the past relied solely on a finding of guilt based on some evidence at a misconduct hearing to decide that a prison official has met his burden of showing that he would have engaged in the same conduct anyway. *See Cabello, supra,* 20102 WL 3231095, at *4; *Tabb, supra,* 2012 WL 3113856, at *9. Such evidence (a finding of guilt based on some evidence) by itself is sufficient to carry the defendant's burden.

However, in this case, consideration of two other matters in the summary-judgment record, along with the above evidence, bolsters our conclusion that Morrison has met his burden here. We note that the Third Circuit has relied on other evidence in the record, in addition to some evidence to support the disciplinary finding of guilt, to dispose of a retaliation claim. *See Mearin v. Dohman*, 533 F. App'x 60, 63 (3d Cir. 2013)(nonprecedential).

---

[5] We also note that we can rely on a finding of guilt based on some evidence because Plaintiff was able to exhaust his administrative remedies on the finding of guilt. *See Bond v. Horne*, 553 F. App'x 219, 222 (3d Cir. 2014)(nonprecedential)(a finding of guilt in a prison disciplinary proceeding is not sufficient to defeat a retaliation claim when the administrative appeals process was not available to the inmate).

The first matter is the absence of any evidence supporting Plaintiff's conclusional affirmation that Morrison fabricated the misconduct report based on a retaliatory motive. An inmate cannot rely on such unsubstantiated allegations to meet his burden on summary judgment. *See Mincy v. Chmielsewski*, 508 F. App'x 99, 103 (3d Cir. 2013)(nonprecedential); *Dunbar v. Barone*, 487 F. App'x 721, 724 (3d Cir. 2012)(nonprecedential).

The second matter concerns the records from the DOC's inmate phone system (Doc. 69-7, ECF pp. 2-6) and a P.R.E.A. Hotline Report Log, a handwritten log kept by correctional officers at SCI-Camp Hill who answered the Sexual Assault Hotline. (*Id.*, ECF p. 7). The records from the phone system show that no phone call was made from Huntingdon to the Sexual Assault Hotline on February 24, 2012, between 6:30 p.m. and 8:00 p.m. The P.R.E.A. Hotline Report Log shows only one call to the hotline on February 24 at 6:34 p.m. but that it was a hangup that does not indicate who made the call or from which prison. Plaintiff asserts the hotline log may have been "falsely manufactured" but provides no evidence to support that assertion. (Doc. 78-2, Mobley penalty-of-perjury declaration ¶ 51).

All of this evidence supports the grant of summary judgment to Morrison on the retaliation claim. In this context, Plaintiff's penalty-of-perjury declaration that he did in fact call the hotline on February 24, 2012, between 6:30 p.m. and 8:00 p.m. (Doc. 78-2, Mobley Decl. ¶¶ 15 and 51) is insufficient for us to allow the claim to go to trial. The finding of guilt at the misconduct hearing based on some evidence renders this evidence

-13-

immaterial to the resolution of the claim.  *Dunbar*, *supra*, 487 F. App'x at 724 (disregarding the inmate's version of events when the hearing examiner resolved the credibility issue in the victim's favor).

We will issue an appropriate order.  In addition to entering summary judgment on the retaliation claim, that order will include entering summary judgment against Plaintiff on the following claims, which Plaintiff decided not to pursue: (1) a Fourth Amendment claim against defendant Lantz; (2) an equal protection claim against defendant Lantz; (3) a state-law claim of intentional infliction of emotional distress against both Lantz and Morrison; and (4) a state-law defamation claim against Morrison.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: March 29, 2016